UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORGANIZATION OF AMERICAN HISTORIANS, <br><br> Plaintiff, <br><br> v. <br><br> OFFICE OF MANAGEMENT AND BUDGET, *et al.*, <br><br> Defendants. | Case No. 1:26-cv-01281 (TNM) |

## MEMORANDUM ORDER

This case presents an odd pairing: a Freedom of Information Act request coupled with a motion for a preliminary injunction. The Organization of American Historians seeks records from three federal agencies about the Trump Administration's supposed efforts to rewrite American history. In the Historians' view, time is of the essence—so much so that they move for a preliminary injunction to force the agencies to release the records within 30 days. But the Historians fall short on every preliminary-injunction factor. The Court thus denies their unusual motion.

**I.**

The Organization of American Historians "is the largest professional society dedicated to the teaching and study of American history." Compl., ECF No. 1, ¶ 3. The Historians accuse the Trump Administration of pursuing a "campaign to direct, condition, and reshape the interpretation of American history at federally managed institutions." *Id.* ¶ 1.

1

That concern centers on President Donald Trump's March 2025 Executive Order titled "Restoring Truth and Sanity to American History."  Exec. Order No. 14253, 90 Fed. Reg. 14563 (Mar. 27, 2025).  The Executive Order outlines the Administration's policy "to restore Federal sites dedicated to history . . . to solemn and uplifting public monuments that remind Americans of our extraordinary heritage."  *Id.* at 14563.  To that end, it instructs the Director of the Office of Management and Budget ("OMB") "to ensure that future appropriations to the Smithsonian Institution . . . prohibit expenditure on exhibits or programs that degrade shared American values."  *Id.* at 14564.  The Executive Order also directs the Secretary of the Interior to review federal historical sites for "content that inappropriately disparage[s] Americans past or living."  *Id.*  Only one command has a deadline:  "The Secretary of the Interior shall provide sufficient funding, as available, to improve the infrastructure of Independence National Historical Park, which shall be complete by July 4, 2026, the 250th anniversary of the signing of the Declaration of Independence."  *Id.*

As the Historians see things, the Administration's historical revisionism is in full swing.  They allege, for example, that the National Park Service ("NPS") has been removing disfavored historical content at various sites across the Nation.  Compl. ¶ 10.  The Administration's supposed "focal point" is the "federal commemorative initiative, 'Freedom 250,' centered on July 4 and the 250th anniversary."  *Id.* ¶ 11.  According to the Historians, "[c]ontent decisions about what will be presented to millions of visitors at national parks and Smithsonian museums during the anniversary celebrations are being made now."  *Id.*

2

Resolved to learn more about this campaign, the Historians submitted FOIA requests to OMB, NPS, and the Department of the Interior (NPS's parent agency). *Id.* ¶ 12. Their March 2026 requests sought records on the agencies' efforts to "implement[] or coordinat[e] Executive Order 14253 or any directive concerning the presentation of American history." *See id.* ¶¶ 13–15. For each request, the Historians demanded expedited processing. *Id.* ¶ 16. None of the agencies granted that demand. *Id.* ¶¶ 19–20. Nor has any agency released records. *Id.* ¶ 22.

The Historians want to speed things up. They thus launched suit here, claiming that the agencies violated FOIA by failing to grant expedited processing. *Id.* ¶¶ 23–27. Two days after their Complaint, the Historians submitted a Motion for a Preliminary Injunction. ECF No. 4. That filing asks the Court to order the agencies "to grant [the Historians'] requests for expedited processing . . . and to complete processing and produce all nonexempt responsive records within thirty days." *Id.* at 1. The Court deemed the Motion resolvable on the briefs. Min. Order 5/2/2026. It now denies the Historians' bid for preliminary relief.

## II.

A preliminary injunction is "an extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (cleaned up). "[A] plaintiff seeking a preliminary injunction must make a clear showing that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (cleaned

up).  Where the Government is the party opposing injunctive relief, the latter two factors "merge."  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Historians seek a remedy that is rarer still.  "Preliminary injunctions requiring agencies to expedite FOIA processing and to produce responsive documents by a certain date are 'mandatory' preliminary injunctions."  *Democracy Forward Found. v. OMB*, 780 F. Supp. 3d 61, 72 (D.D.C. 2025) (cleaned up).  Those injunctions "alter, rather than preserve, the *status quo* by commanding some positive act."  *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 6 (D.D.C. 2015) (cleaned up).  This strays from the preliminary injunction's usual role as "a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'"  *See Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

Indeed, the word "preliminary" seems like a misnomer here.  In asking to compel the agencies to grant expedited processing and quickly release records, the Historians "essentially request[] the full relief [they] seek[]" in the Complaint.  *See Daily Caller*, 152 F. Supp. 3d at 6–7.  That demand flouts the maxim that "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits."  *See Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); *cf. Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (stating that preliminary injunctions "do not conclusively resolve legal disputes").

In all its peculiarity, the Historians' requested relief cannot satisfy even the standard test.

### III.

Consider the merits and irreparable harm.  In this unusual FOIA setting, those factors "track[] closely with" each other.  *See Democracy Forward Found.*, 780 F. Supp. 3d at 74 (cleaned up).  The Historians' failure to show likely entitlement to expedited processing mimics their shortcoming on irreparable injury.

Agencies typically process FOIA requests on a first-come, first-served basis.  *Am. Oversight v. DOJ*, 292 F. Supp. 3d 501, 505 (D.D.C. 2018).  In rare situations, some requesters may jump the line.  *See* 5 U.S.C. § 552(a)(6)(E).  FOIA requires agencies to provide expedited processing—*i.e.*, to process requests "as soon as practicable"—if the requester shows a "compelling need."  *Id.*  In relevant part, a "compelling need" exists when the requester is "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).[1]

Courts assess three factors in deciding whether a FOIA request is sufficiently urgent: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).  This test should be "narrowly applied." *Id.* (cleaned up).

---

[1]  The Government does not dispute that the Historians are "primarily engaged in disseminating information." *See* Defs.' Opp'n, ECF No. 7, at 32–38.  Rightly so. *See* Compl. ¶ 3 (describing how the Historians "publish[] a peer-reviewed journal, issue[] public statements and policy analyses, convene[] national conferences, and regularly disseminate[] historical scholarship and analysis to educators, policymakers, journalists, and the public").

FOIA plaintiffs usually founder on factor two.  The Government performs lots of "activity" that is "of current exigency to the American public." *See id.*  That alone does not warrant expedited processing.  Expedition would lose all practical meaning if most FOIA requests could claim priority.  *See id.* ("[A]n unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none.").

To guard against this scenario, courts demand a showing that "the consequences of delaying a response would compromise a significant recognized interest." *Id.*  This requires plaintiffs to "identify a specific end point at which the information's value drops off altogether — *i.e.*, the conclusion of a process such as a legislative vote, impeachment proceeding, national census, court case, or the like." *See Heritage Found. v. EPA*, No. CV 23-748 (JEB), 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023).  "[T]he question boils down to whether the records requested will become stale after the requested date and thus be of little value to inform the public of ongoing proceedings of national importance." *CREW v. DOGE*, 769 F. Supp. 3d 8, 19 (D.D.C. 2025) (cleaned up).

Irreparable harm is much the same.  To establish that element, plaintiffs must show that the requested records are "1) time-sensitive and highly probative, or even essential to the integrity, 2) of an imminent event, 3) after which event the utility of the records would be lessened or lost." *Am. Oversight v. DOJ*, No. CV 25-3200 (JEB), 2026 WL 914925, at *4 (D.D.C. Apr. 3, 2026) (cleaned up).  FOIA plaintiffs clear that hurdle only rarely: "when requested FOIA disclosures [a]re integral to, and certain to lose value after, events with irreversible consequences." *Id.* (collecting cases); *see, e.g.*, *Washington Post v. DHS*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) (finding irreparable harm where

newspaper sought information related to "impending election"); *Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d 293, 300–01 (D.D.C. 2017) (same where looming military strike on Syria was type of event that "cannot be undone").  "Absent a critical need for records at a scheduled or imminent event, however, preliminary injunctive relief to expedite production of records in FOIA cases is generally denied." *New York Times Co. v. Def. Health Agency*, No. 21-CV-566 (BAH), 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021) (footnote omitted).

Faced with this tall order, the Historians offer little.  They purport to "identify the imminent event with precision: July 4, 2026, the deadline [that Executive Order] 14253 imposes by its own terms."  Pl.'s Mem., ECF No. 4-1, at 14.  But this oversells the Executive Order, which sets a July 4 deadline only for "improv[ing] the infrastructure of Independence National Historical Park."  *See* Exec. Order No. 14253, 90 Fed. Reg. at 14564.  Nowhere does the Executive Order peg the Administration's supposed historical revisionism to that date or any other one.  *See id.* at 14563–65.

Indeed, the Historians betray their own failure to mark out July 4 as "an express compliance deadline" in admitting that "the administration's initiative runs through December 2026."  *See* Pl.'s Mem. at 14–15.  They further undercut their case for July 4 in alleging that the Administration's "deadline for content corrections" at the Smithsonian was December 10, 2025, and thus has already "expired."  English Decl., ECF No. 4-2, ¶ 6.  Even by the Historians' own telling, then, July 4 is both too early and too late.  Their inability to identify a specific timeframe is fatal.  *See Heritage Found.*, 2023 WL 2954418, at *5 (denying preliminary injunction where plaintiffs "identified no

specific proceeding — be it a vote on legislation, a proposed administrative action, or a judicial process — after which the sought records would lose substantial value").

In their reply, the Historians retreat.  They now contend that "[t]he relevant 'event' in this context is not a single fixed date, but the finalization and implementation of decisions across federal institutions on a rolling basis—after which the opportunity for contemporaneous public evaluation is materially diminished."  Pl.'s Reply, ECF No. 8, at 7.  But that position is no more defensible.  The Historians fail to show that the requested records "will become stale" at any point, whether after July 4 or any later date. *See CREW*, 769 F. Supp. 3d at 19 (cleaned up).  Debates about American history are as old as their subject.  Those discussions are unlikely to quiet down any time soon, and the Court is confident that the Historians will continue to have a voice in them.  NPS informational signage that is taken down today may later be added back, and vice versa. Indeed, it seems unlikely that the signage currently being updated is the first such signage, or that the new placards will be the last.  Overall, there simply is "no reason to believe" that the public's interest in our Nation's history "will evaporate" after the Declaration's 250th anniversary, or that one version of history will be locked into place. *See Democracy Forward Found.*, 780 F. Supp. 3d at 76.

Summing up, the Historians have not demonstrated likely entitlement to expedited processing, much less to the release of records within 30 days.  *See CREW*, 769 F. Supp. 3d at 19 (ruling that a plaintiff who "seeks not just expedited processing but production of its requests by a date certain" must show likely entitlement to expedited processing and to "hav[ing] processing finished by the requested date certain" (cleaned up)).  They likewise come up short on irreparable harm.  The Historians' request "lacks the imminent

finality that ha[s] led courts to" award the rare preliminary injunction.  *See Am. Oversight*, 2026 WL 914925, at *5.  The Administration's historical campaign does not have "irreversible consequences" like elections or military strikes.  *See id.* at *4; *Washington Post*, 459 F. Supp. 2d at 75; *Protect Democracy Project*, 263 F. Supp. 3d at 300–01.  Ruling for the Historians "would mean that the identification of almost *any* imminent event would be a basis for preliminary relief ordering production of records having some potential connection to that event"—which would launch "[a]n open season for [FOIA] preliminary injunctions."  *See Heritage Found. v. Dep't of State*, No. CV 24-2862 (TJK), 2024 WL 4607501, at *5 (D.D.C. Oct. 29, 2024).  The caselaw and common sense forbid that drastic move.

In closing, a brief word on the "merged" equities and public interest.  *See Nken*, 556 U.S. at 435.  These factors further militate against preliminary relief—most notably because allowing the Historians to skip the queue would "impose undue hardship on similarly situated FOIA requesters, who are depending on, and adhering to, regular administrative FOIA record production processes to obtain information important to them."  *New York Times Co.*, 2021 WL 1614817, at *10; *cf. Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 106 (D.D.C. 2024) ("Relief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate when no net gain in such adjudications is achieved." (cleaned up)).  The hardship to other requesters only grows "[a]s outstanding requests pile up at agencies" and FOIA suits proliferate on court dockets.  *See Am. Ctr. for L. & Just. v. DHS*, 573 F. Supp. 3d 78, 83 (D.D.C. 2021).  In this setting, a preliminary injunction would further increase the burden by leapfrogging the less drastic mechanisms FOIA envisions for urgent requests, like expedited

processing and production orders.  *See* 5 U.S.C. § 552(a)(6)(E) (expedited processing); *id.* § 552(a)(4)(B) (production orders).  Ultimately, then, the equities and public interest reinforce what the merits and irreparable harm already compel.

*  *  *

"The past is never dead.  It's not even past."  William Faulkner, *Requiem for a Nun* 73 (1951).  This truism hints at why the Historians' urgency is ill-founded.  The records they desire will remain relevant even when produced in their due course.  A preliminary injunction is unwarranted here.

For these reasons, it is hereby

**ORDERED** that Plaintiff's [4] Motion for a Preliminary Injunction is **DENIED**.


Dated: May 29, 2026                                 TREVOR N. McFADDEN
                                                    United States District Judge

10